Good morning. Good morning, Your Honors. My name is Lori Tyker, and I represent the appellant, Mr. Clifford Stubbs. I'd ask to reserve one minute for rebuttal. Could you pull the mic down a little closer to you? That's fine. Great. Thank you. Your name was Lori? Lori Tyker, Your Honor. Yes. Thank you. Thank you. And I take it you're from Las Vegas, not Las Vegas. Yes. Go ahead. Nevada. Not Nevada either. Thank you, Your Honor. Thank you, Your Honor. In exchange for a plea of guilty to first-degree murder, the State, the Defense Council, and Mr. Stubbs agreed that the State was to stipulate to a sentence of life with possibility of parole. Mr. Stubbs received two sentencing hearings in Nevada, both of which included the same prosecutor who repudiated his duties as far as the guilty plea agreement was concerned. Therefore, the only remedy that allows for fundamental fairness and for due process in this case is rescission. The first sentencing ---- I remember a great line from a movie where someone said, that's accurate, but it's not true. There were two sentencing hearings, right? That's correct. At the second sentencing hearing before a new judge, not the other judge. Correct. In the second sentencing hearing, the new judge basically told the prosecutor to keep his mouth shut. He did. And that's a breach of the agreement. And there's plenty of law ---- Judge's statement to him ---- Well, what happened? ---- that what you did in the first sentencing hearing is inappropriate, and I won't have that done before me. So you're frozen in your position. You did the plea agreement. Now I'm going to go ahead and sentence. But here's the problem with that, Your Honor. The prosecutor's breach, the prosecutor's duty in this was to stipulate to a sentence of life with. He affirmatively had to get up there and utter those words that, as the State, we recommend that Mr. Stubbs receive a sentence of life with. So ---- Wasn't that the plain effect of what the new judge did in the second sentencing hearing? I don't believe it is, because what you ---- The problem is, not only did he not sit down, but implicitly he continued throughout, and again, we have almost two volumes of hearings that occurred after the case came back on remand. But I believe that if you look at the context of what this prosecutor did from day one, where we have the newspaper article saying that he never intended to comply with his plea agreement, it was his, you know, decision all along that he wasn't going to do anything to do that. And that resulted in having the second hearing. That's correct. However, my argument is that from the beginning, from the first sentencing continuing into the second sentencing, implicitly this prosecutor never wanted this ---- he was never going to make that recommendation that Mr. Stubbs receive life in prison with parole. And you can see that by when it comes back the first time, and they're talking about specific performance and what that ---- what does that mean? He, the prosecutor, who's had his hand slapped by the Nevada Supreme Court saying, listen, you breached. You breached the first time. We're bringing this back for a remand. We have him implicitly over here saying, I don't agree with the Nevada Supreme Court. They got it all wrong. I didn't breach this. He does everything possible. In addition, during the motion to withdraw the guilty plea, we have the new judge who's hearing that motion to withdraw, which is occurring pursuant to Nevada law as it should before Mr. Stubbs' sentence. Even then, he states when the civil judge who is hearing the motion to withdraw, he says, you know, Mr. Prosecutor, you know, you're getting a little bit close here in terms of, you know, why this is relevant in terms of Mr. Stubbs' credibility. Even then he says, I know I'm getting close to the line, Your Honor. Every time the defense counsel throughout these six proceedings that last for four months before Mr. Stubbs is eventually sentenced, every time the defense counsel says, again, Your Honor, I believe that he is breaching this plea agreement, he is not doing what he should be doing, which is saying the State recommended that he receive a sentence of life with, he gets up and says, no, no, no, no, no, I'm not breaching, I'm not breaching, I'm not breaching. Implicitly, Your Honor, in every single thing that he's done throughout the proceedings, which began at the first sentencing and continued all the way to the second sentencing, implicitly, he's repudiated that plea agreement. Kennedy. What was the sentence? I'm sorry. Go ahead. Well, I was saying in the second sentencing, the judge says, I'm a little in doubt about what the court of appeal was telling me. So, counsel, do you think that I have to give a sentence of life with possibility of parole, or do you think that I'm free to give a sentence that I think is appropriate? In other words, I'm not bound by the man. What are your views on that? And part of what the prosecutor is doing is responding to that, I think. Part of it. I would agree, Your Honor. Part of it is in response to that question as to what does specific performance mean, because you have defense counsel saying it's one thing, and the judge is still a little bit confused by the words of the order. Defense counsel says you have to sentence with parole, which is more than specific performance of the plea agreement. And I would agree with that. However, where this prosecutor crosses the line and breaches, again, is implicitly within the agreement. And under Santabello and under numerous cases, including United States v. Johnson, the government must not explicitly or implicitly repudiate the agreement. And I think it's clear from the beginning that this prosecutor has said, and actually he didn't say even in the first sentencing, he never said, we stipulate that Mr. Sibbs should get life with. He has never said and stood up and said those words. He's never said that. And implicitly, he's done everything possible to influence the ultimate sentence that Mr. Sibbs did receive. Yeah. The same court that, to use your phrase, slapped him down for his performance in the first sentencing hearing found no error in his performance in the resulting sentence in the second hearing, correct? That's correct. And what my argument there, Your Honor, is that no deference is owed to that that Nevada Supreme Court finding. Because when the Nevada Supreme Court looked at it a second time, what they focused on was only part of what was raised in defense counsel's brief. Defense counsel raised the argument that the new judge shouldn't have looked at all of the briefing and everything else that occurred before the second sentencing. But what defense counsel also argued, and the clear Santabello issue here, was that, again, this prosecutor breached the plea agreement. How much time elapsed between the slapdown, if you will, and the affirmance of the ultimate sentence? The – let's see. Let's see. The second sentencing occurred three years later. And the dissent – so probably – there was a couple years there, Your Honor. Did the makeup of the Nevada Supreme Court change? Yes. In between? Yes. I believe at least by a couple of justices. The justice who wrote? The second – the second sentencing judge hadn't – he's not – he wasn't on the Nevada Supreme Court by that – at that point, but now he is. And your contention is that the ultimate decision of the Nevada Supreme Court to conclude that what was done at the second hearing was not error is not entitled to deference? Correct, Your Honor. Under Delgado, Green v. Lampert, and Buckley v. Terhune, because they didn't discuss Santabello, they didn't discuss the breach, and there was no basis for the reasoning of a clearly established federal law that they were applying when it clearly – it was in front of them in appellant's opening brief to the Nevada Supreme Court. They focused on the judicial conduct issue only. Do you want to save a little time for rebuttal? Yes, thank you. Okay. Thank you very much for your argument. We'll hear from the State at this time. Ms. Proctor. Good morning, and may it please the Court. My name is Heather Proctor, Deputy Attorney General with the State of Nevada, and I have the privilege of representing the Respondents in this matter. With regard to the issue of whether or not the prosecutor breached the plea agreement on remand, as has been noted in this Court so far, the prosecutor's statements never repudiated the plea agreement, and he never argued for a harsher sentence. In fact, during the first sentencing, the prosecutor specifically stated, quote, the State would concur with its previous articulated opinion in the plea agreement, end quote. The State specifically noted that it would agree with the plea agreement and that the plea agreement provided that the State would recommend life with the possibility to parole. The prosecutor at the second hearing sort of reminds me of a football game where the crowd has been warned about too much noise and the camera focuses on a player and he's going at the same time. I don't know if you've watched football. In other words, he's trying to tell the referee that, okay, quiet down, but he's also telling his friends in the stands to up the ante a bit. What part of compliance with the plea agreement didn't this person understand? Your Honor, there is nothing in the plea agreement that stated he could not address the State district court's questions regarding interpretation of the Nevada Supreme Court's order on remand, which is what he did at that first sentencing. His statements were with regard to how an interpretation of that specific performance order should be made, and his statements were towards the Nevada Supreme Court's order, but they were not towards the plea agreement itself. He never repudiated the plea agreement. You agree he flaunted the agreement at the first hearing? At the first hearing, there was some disagreement. Some disagreement? At the first hearing? The plea agreement required him to stipulate and to urge the court to impose life with the possibility of parole, didn't it? Yes, it did. And he didn't do that? He did not. But he did at the order on remand. And the State district court, as has also been noted by this Court, on at least five different occasions, specifically stated that in order to comply with the Nevada Supreme Court's order on remand, the State would not be permitted to speak at the actual sentencing, that they would be able to not be able to add anything, and that, in fact, the State would stand silent at the sentencing. What district attorney's office was this? Washoe County District Attorney's Office, Your Honor. What's the size of that office, or was it at the time? I know that they have – I don't know precisely. I know that they have several district attorneys. It is the second-largest district attorney's office in the State of Nevada. In other words, there were people, other people, other than the prosecutor who attended the first sentencing hearing who could have attended the second. There are, Your Honor. Do you know why that wasn't done? I do not know, Your Honor. I would expect that it's because the same prosecutor is assigned to the case throughout that he was assigned a case on remand. Okay. Unless the Court has anything further regarding that particular issue or the issue regarding ineffective assistance of counsel. I don't have any other questions, but the next time you do a CLE with district attorneys, tell them in this circumstance the wisest course is to assign someone new. Yes, Your Honor. Thank you. It avoids a lot of problems. Thank you. That's a former U.S. attorney in the District of Arizona talking to you about this. Rebuttal? That district attorney is now practicing in Clark County, Your Honor. He's moved from Reno to Las Vegas. In terms of what he was able to say, what he was able to choke out, he said the state would concur with the previously articulated opinion. That's not saying what the term was. That's not saying what the benefit of the deal was. He, in terms of making that deal, was to stand up there and say that the state stipulated that Mr. Stubbs received life with the possibility of parole, and he couldn't choke it out. That ambiguous statement that he said occurred four months prior to the actual sentencing. He implicitly, using your footfall analogy, was doing everything possible to make sure that that agreement wasn't reached, and standing silent under this Court's own cases as well as United States Supreme Court is not enough in terms of him, you know, fulfilling the terms of the plea agreement. I would argue that you can't undo what's been done here. There's absolutely no way to unring the bell that this prosecutor rang. You can't enforce the plea agreement because there's no way to get back to the status quo for Mr. Stubbs. Remedy is the rescission, as in Buckley, the only way to achieve fundamental fairness, and that's a viable remedy under Sandovalo. The district attorney in this case cannot give lip service to an agreement and implicitly advocate for life without. And with that, I submit it. Okay. Thank you both for your argument. Very well argued. The case just argued will be submitted for decision. And we'll now.
judges: Canby, Thompson, Hawkins